[Civ. No. 14393. First Dist., Div. One. July 28, 1950.]

CHARLES ALVA et al., Appellants, v. SEQUOIA UNION HIGH SCHOOL DISTRICT et al., Respondents.

Irving G. Breyer for Appellants.

Louis B. DeMatteis, District Attorney, John A. Bruning, Assistant District Attorney, and Keith C. Sorenson, Civil Deputy District Attorney, for Respondents.

PETERS, P. J.—By this proceeding in mandamus the nine petitioners seek to compel the Sequoia Union High School District to reemploy them, it being contended that they had not been lawfully discharged by the district. Admittedly, all of the petitioners were formerly probationary teachers hired by the district. Admittedly, the board of trustees of the district has the lawful right to refuse to reemploy such teachers, and need give no reason for a discharge. Admittedly, each of the petitioners received a dismissal notice, in proper form, dated May 10, 1949, and postmarked May 11, 1949, notifying

the addressee that he or she would not be reemployed for the next school year. Admittedly, such a notice may be given by the board at any time before May 15th of the particular year involved. Admittedly, the notices of dismissal were authorized by the board at meetings held on April 29th and May 6, 1949, and the action taken at these meetings was ratified at a meeting held on May 13, 1949. It is a conceded fact that action to dismiss a probationary teacher can only be taken at a public meeting of the board, and that if notices of dismissal are authorized at a private or executive session of the board and not at a public meeting, such notices are invalid. The sole contention of petitioners is that their dismissal notices were not authorized by the board at a meeting open to the public and, it is contended, they were, therefore, ineffective. The trial court found that the notices of dismissal were properly authorized at a meeting of the board open to the public, and denied any relief to petitioners. From the judgment denying them relief petitioners appeal.

Section 2204.2 of the Education Code provides: "No action authorized or required by law shall be taken by the governing board of a school district except in a meeting open to the public." Section 3194 of that code provides: "All meetings of the high school board shall be open to the public." There is no statutory definition of what constitutes a meeting "open to the public," within the meaning of these sections.

The board here involved holds its regular meetings on the third Friday of each month at the high school. Special meetings are held as needed. During 1948 and 1949 all meetings, regular or special, were held in the school library, the board room, or the superintendent's office, depending upon the number of people, nonmembers, who attended the meeting. The library is a large room and can accommodate a large number of people. The other two rooms can accommodate but 12 to 15 people, including the members of the board. Notices of special meetings were never published. The members of the board were either notified of such meetings by telephone, or the date for such a special meeting was set at a preceding meeting. Usually, before the board met formally, in either a regular or special meeting, the members would convene in the superintendent's office and discuss, in private executive session, some of the matters on the agenda. Matters relating to the selection and retention of personnel were always first discussed in such a private conference, policy agreed upon,

and then the appropriate formal action was taken at a public meeting. It is conceded that members of such boards properly may meet privately for discussion purposes.

The key meeting here involved was a special meeting and was held on April 29, 1949. The regular meeting for that month had been held on April 15, 1949, and that was admittedly a public meeting. There is substantial evidence that at the April 15th meeting the date was fixed for a special meeting to be held on April 29th, at which personnel problems were to be passed upon. This April 29th meeting was held in the superintendent's office, a room with one door opening into the main hallway and another into an inner office. These doors were closed at all times here relevant, but not locked. The meeting was held in this office because April 29th was citizens' night, and there were several thousand adults visiting the school that night to view the exhibits and to meet the teachers. The library was in use as an exhibit room. The board convened at 7:30 p. m., all members being present. By unanimous consent, the meeting was then recessed to permit the members of the board to visit the various exhibits on display, and to meet with the parents. The meeting reconvened at 9 p. m. in the superintendent's office. No member of the general public was then or later present. The superintendent then made his recommendations as to the retention or discharge of teaching personnel. A discussion was had of these matters. Admittedly, this portion of the meeting was an executive session, and no member of the public would have been admitted had such person requested admittance. No one did. The minutes of that meeting show, and several members of the board testified, that, after the discussion, and without any formal break in the proceedings, the resignations of certain teachers were accepted, and by formal motion, which was duly seconded and approved unanimously, certain named teachers were reemployed for the next school year. It was then duly moved, seconded and approved unanimously that certain teachers, among them the nine petitioners, should be given notices of dismissal. The minutes of this meeting recite that it was then agreed that there were a few teachers on the dismissed list whose cases deserved reconsideration. Accordingly, it was agreed that the action of the board would be reviewed at the next special meeting to be held on May 6, 1949. No member of the public requested admission during the period these motions were under consideration.

On May 6, 1949, a special meeting was held in the superintendent's office, under circumstances substantially similar to those of April 29th. No member of the public appeared at this meeting. Various items of board business were transacted, and then the board proceeded to reconsider its actions in reference to personnel. Formal motions were passed, similar but not identical as to certain individuals, to those adopted on April 29th, and in particular ordering dismissal notices to be sent to designated teachers, including the nine petitioners. Such notices, in proper form, dated May 10, 1949, and postmarked May 11, 1949, were sent to each of the petitioners.

Another special meeting was held on May 13, 1949, two days before the May 15th deadline for dismissal notices, but after such notices had been sent and received. At this meeting, some items of board business were transacted and then all of the dismissed teachers who desired to argue their cases, were given a hearing before the board. The board then, according to the minutes, "reviewed in detail" the status of all of the teachers who had been given dismissal notices, changed its vote as to several teachers and granted them contracts, but upon motion duly made, seconded, and carried, unanimously "sustained" its former action of ordering dismissal notices mailed to the other teachers, including the petitioners.

Several board members testified that between 7:30 and 9 p. m. on April 29, 1949, they told several members of the public, including a local newspaper reporter, that a meeting of the board was to be held later that night. They did not invite these people to attend, nor did they tell them not to attend. Admittedly, the teachers affected were not told of the proposed meeting. Several members of the board testified that, while the affected teachers and the public generally would not have been admitted to the executive session while the recommendations of the superintendent were being discussed, such persons, had they requested admittance during the time the formal motions were under consideration, would have been admitted.

One of the petitioners testified that on April 29, 1949, he telephoned one of the members of the board and asked him if he could attend the meeting that night. He was told that the meeting was a closed meeting and that he could not attend. The member of the board involved admitted telling the teacher that he could not attend, but stated that he had in mind the executive session and not the portion of the meeting at which

formal action was to be taken. Various persons testified that, had they known of the meeting, they would have attended, while many others testified they knew of the meeting but did not attend. No one, except the teacher above mentioned, testified that he was denied admittance to the meeting.

It should be mentioned that there is no statutory requirement that probationary teachers be given a hearing prior to dismissal, and no requirement that, at a public meeting, members of the public be given the right to speak, although that courtesy was usually extended if requested. Admittedly, the board had the right, with or without cause, to order the dismissal notices sent to petitioners. The board obviously gave careful consideration to the problem. It considered the dismissals at three meetings, and, at the last two, changed its first orders as to certain teachers. While it still had power to renew the contracts, it gave any teacher desiring to do so the right to appear and argue his case. Nevertheless, petitioners contend that the action ordering the dismissals was not taken at a "meeting open to the public" within the meaning of section 2204.2 of the Education Code.

The trial court, as already pointed out, found that the meetings of April 29th and May 6th were "open to the public" within the meaning of the section, and that the letters of dismissal were properly authorized.

Petitioners argue that these findings are unsupported, and contend that, as a matter of law, the evidence demonstrates that the two meetings were private and not public. They point out that the first part of the meeting of April 29th was admittedly private, and that there was no break between this portion of the meeting and the portion when the motions were formally considered. They also emphasize that no formal notice to the public was given of the meeting of April 29, 1949, and contend that such a notice is required under section 3193 of the Education Code.

The arguments of petitioners are unsound. In the first place, section 3193 only requires notice of a special meeting to be given to the members of the board. There is no statutory requirement that the public be notified of any meeting of the board. Moreover, in the instant case, there is substantial evidence that the date of the special meeting to discuss personnel problems was fixed at the regular public meeting of April 15th. Under the law, this was sufficient notice to the public.

In the second place, while the evidence would support a finding that the two meetings were private, the evidence does not compel that conclusion. It was for the trial judge to weigh the evidence, and there is credible and substantial evidence, and reasonable inferences therefrom, to support his findings. That this is so, is amply demonstrated by his memorandum opinion filed in the case. In that opinion he (the Honorable Andrew Schottky) stated in part:

"In considering this question the court must take into consideration the presumption that public officials have performed their duties in a regular manner. This presumption is itself a species of evidence, but it may be overcome by contradictory evidence.

". . . The Court is convinced that at the time the motion in question was made and adopted the meeting of the trustees was open to the public. It is true that there were no members of the public present at the meeting and, therefore, it was not necessary for the trustees either to retire from the meeting room or to ask the members of the public to retire while the Board discussed the recommendations of the District Superintendent. However the meeting was held in the Board room and the door to said room was not locked and no effort was made to exclude visitors from entering, although it is clear that no one sought to enter. After the recommendations for [of] the District Superintendent had been discussed and the members of the Board had decided what they wished to do, the meeting was resumed and the motion to send notices of dismissal to petitioners and other teachers was made and carried. It is only fair to assume, in line with the presumption hereinbefore referred to, that if any member of the public had desired to be present at the meeting and had come to the meeting room for that purpose, the Board would either have retired for its executive session or would have asked those present to retire during such executive session (depending upon the number present). Under all the facts and circumstances . . . and the inferences which may reasonably be drawn . . . the meeting . . . was a meeting open to the public."

We agree with this analysis.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.